UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

SHELIA HALLMAN-WARNER,

    **Plaintiff,**

v.                         **CIVIL ACTION NO. 1:22-00243**

BLUEFIELD STATE COLLEGE
BOARD OF GOVERNORS, et al.,

    **Defendants.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the court are defendants' motions to dismiss.  <u>See</u> ECF Nos. 21, 24, and 26.  For the reasons expressed below, those motions are **GRANTED**.

I.  Background

Plaintiff Shelia Hallman-Warner, acting pro se, filed the instant complaint on May 31, 2022.  <u>See</u> ECF No. 2.  In her complaint, Hallman-Warner complains of events occurring on December 23, 2020, at Bluefield State College in Bluefield, West Virginia.  <u>See</u> <u>id.</u>  The complaint is written on a form available on the court's website and is entitled "COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (Non-Prisoner Complaint).  <u>See</u> <u>id.</u>

A recent decision by West Virginia's Intermediate Court of Appeals provides background relevant to plaintiff's instant complaint:

    Ms. Hallman-Warner was a professor at Bluefield
    State.  On August 20, 2018, Ms. Hallman-Warner, by

counsel, filed the underlying complaint [in the
Circuit Court of Kanawha County] against Bluefield
State alleging that its representatives intentionally
provided false and misleading information to the
county prosecutor in order to maliciously prosecute a
misdemeanor charge against her for discharging a stun
gun at the college.  Bluefield State allegedly
provided the false and misleading information in
retaliation for Ms. Hallman-Warner voicing concerns
about institutional management issues at the college.

On December 16, 2020, the parties participated in
a court-ordered mediation.  The parties mediated for
three full days, finally agreeing near the close of
business on December 18, 2020, that Ms. Hallman-Warner
would immediately resign or retire; Bluefield State
would pay an agreed upon monetary sum certain to Ms.
Hallman-Warner and would pay for the mediator; the
settlement agreement would be confidential to the
extent allowed by law; and the settlement agreement
would include a non-disparagement clause.

On January 19, 2021, Ms. Hallman-Warner executed
a confidential release and settlement agreement
memorializing the parties' agreement at mediation.
Settlement checks were sent to her then counsel on
February 2, 2021.  On February 4, 2021, Ms. Hallman-
Warner returned Bluefield State's tablet.  On February
12, 2021, the circuit court entered an order
dismissing the case, with prejudice, on the basis that
the parties had reached a settlement of all claims.
On February 16, 2021, the settlement checks were
cashed.

Hallman-Warner v. Bluefield State Coll. Bd. of Governors, No.

22-ICA-38, 2023 WL 2367454, at *1 (W. Va. Ct. App. Mar. 6,

2023).[1]

---

[1] A few months after entering into the settlement agreement,
Hallman-Warner moved to invalidate it.  The circuit court denied
that motion and the intermediate court of appeals affirmed.  See
Hallman-Warner, 2023 WL 2367454, at *1-3.

Hallman-Warner's complaint in this matter picks up after she settled in her state court case.  According to the allegations of the Complaint, which are taken as true at this stage of the proceedings, plaintiff states:

> Court ordered mediation was held on 12/16/20, demanding resignation alleged to be discrimination and retaliation for engaging in Whistleblower activity, 2015-Present.  Plaintiff resigned on 12/23/20 under threats of termination, bullying, duress, coercion. Plaintiff was threatened with arrest if attempted to enter her faculty office prior to arranged date and time.  On 12/23/20, approximately 1:00 p.m. plaintiff arrived on campus to be met with police officer present while cleaning out office, escorted out of building and off campus.  Brent Benjamin ordered the escort, depriving plaintiff of entitled freedoms; Ted Lewis was present and returned periodically to assess progress of police escort.  Robin Capehart and Board of Governor's [sic] are allegedly complicit in violation of constitutional rights including the right to be free of defamation of character.  Every citizen has inalieable [sic] rights including freedom from harassment, discrimination, retaliation, toxic work environment, whistleblower protections, that reject defendant being allowed to make plaintiff to be punished.  All efforts futile to hold to account.

ECF No. 2 at 4.

That form complaint informs plaintiff that "[u]nder 42 U.S.C. § 1983, you may sue state or local officials for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws].'"  Id. at 3.  The form asks plaintiff "what federal or statutory right(s) do you claim

is/are being violated by state or local officials?"  Id.  She responded:

> Violation of due process and equal protections, 5th & 14th Amendment, violation of 1st Amendment rights, denial of right to pblic [sic] space; denial of right to prvacy [sic], denied freedom of movement at institution of public higher eductation [sic] receiving federal and state taxpayer funding[,] Defamation[,] Libel in state court records-State + federal

Id.

Named as defendants in plaintiff's complaint are Garry Moore, Chair of the Bluefield State College Board of Governors; Robin Capehart, former President of Bluefield State; Brent Benjamin, Vice-President and General Counsel for Bluefield State; and Ted Lewis, Vice-President for Academic Affairs for Bluefield State.  See id. at 2-3.  All were sued in their official capacity.  See id.  Plaintiff has also sued Capehart, Benjamin, and Lewis in their individual capacity.[2]  See id.

In her prayer for relief, Hallman-Warner asks for:

> Damages, punitive, compensatory, pecuniary, non-pecuniary as deemed appropria[te] by jury.  No dollar amount will restore the pain, suffering, physical deterioration of appearance, weight loss as a result of the extreme trauma and stress endured based on willful, deliberate intent to cause emotional

---

[2] Plaintiff's complaint is confusing as to whether she is suing Lewis in his individual capacity as she checked the box to do so on the form but then marked it out.  See id. at 3.  The court has proceeded as though plaintiff is suing Lewis in his individual capacity as well as his official capacity.

distress, mental anguish to achieve goal of
Constructive discharge, engaged in since 1015 [sic].
Punitive damages could not be excessiv[e] enough to
punish these individuals and ensure no human being is
treated in the manner in which plaintiff has been.
Additionally, recently deceased spouse (March 13,
2022) endured waiting and witnessing police escort of
spouse of 32 years.

Id. at 5.

Defendants Moore, Lewis, and Benjamin have all filed

motions to dismiss.  They argue that the claims against them in

their official capacity are barred by the Eleventh Amendment.

They also maintain that the complaint fails to state a claim

against them and that, even if it does, they are entitled to

qualified immunity.

In opposing the motions to dismiss, plaintiff argues that,

as a recipient of federal funding, Bluefield State "cannot claim

sovereign immunity if sued in federal court."  See, e.g., ECF

No. 31 at 2; ECF No. 54 at 2.


## II. Standards of Review

*A.  12(b)(1)*

A motion to dismiss pursuant to Rule 12(b)(1) asks whether

a court may hear and adjudicate the claims before it.  Federal

courts are courts of limited jurisdiction and can act only in

those specific instances authorized by Congress.  See Bowman v.

White, 388 F.2d 756, 760 (4th Cir. 1968).

The plaintiff bears the burden of proving the existence of subject matter jurisdiction.  See Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).  When considering a motion to dismiss under Rule 12(b)(1), "the court may consider the evidence beyond the scope of the pleadings to resolve factual disputes concerning jurisdiction." Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995); see also Evans, 166 F.3d at 647 ("When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'") (quoting Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991)).

B.  12(b)(6)

"[A] motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989) (citation omitted) (quoting Conley v. Gibson, 355 U.S. 41, 48 (1957), and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)).  "In considering a motion to dismiss, the

6

court should accept as true all well-pleaded allegations and
should view the complaint in a light most favorable to the
plaintiff." Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130,
1134 (4th Cir. 1993); see also Ibarra v. United States, 120 F.3d
472, 474 (4th Cir. 1997) (same).

In evaluating the sufficiency of a pleading, the cases of
Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v.
Iqbal, 556 U.S. 662 (2009), provide guidance. When reviewing a
motion to dismiss, under Federal Rule of Civil Procedure
12(b)(6), for failure to state a claim upon which relief may be
granted, a court must determine whether the factual allegations
contained in the complaint "give the defendant fair notice of
what the . . . claim is and the grounds upon which it rests,"
and, when accepted as true, "raise a right to relief above the
speculative level." Twombly, 550 U.S. at 555 (quoting Conley,
355 U.S. at 47; 5 Charles Alan Wright & Arthur R. Miller,
Federal Practice and Procedure § 1216 (3d ed. 2004)). "[O]nce a
claim has been stated adequately, it may be supported by showing
any set of facts consistent with the allegations in the
complaint." Id. at 563. As the Fourth Circuit has explained,
"to withstand a motion to dismiss, a complaint must allege
'enough facts to state a claim to relief that is plausible on

its face.'" <u>Painter's Mill Grille, LLC v. Brown</u>, 716 F.3d 342, 350 (4th Cir. 2013) (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 570).

According to <u>Iqbal</u> and the interpretation given it by our appeals court,

> [L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes. <u>See Iqbal</u>, 129 S.Ct. at 1949. We also decline to consider "unwarranted inferences, unreasonable conclusions, or arguments." <u>Wahi v. Charleston Area Med. Ctr., Inc.</u>, 562 F.3d 599, 615 n. 26 (4th Cir. 2009); <u>see also Iqbal</u>, 129 S. Ct. at 1951-52.
>
> Ultimately, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Facial plausibility is established once the factual content of a complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims "'across the line from conceivable to plausible.'" <u>Id.</u> at 1952 (quoting <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. 1955).
>
> Satisfying this "context-specific" test does not require "detailed factual allegations." <u>Id.</u> at 1949-50 (quotations omitted). The complaint must, however, plead sufficient facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." <u>Id.</u> at 1950. Without such "heft," <u>id.</u> at 1947, the plaintiff's claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability," <u>id.</u> at 1949, fail to nudge claims "across the line from conceivable to plausible." <u>Id.</u> at 1951.

Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc., 591 F.3d 250,
255-56 (4th Cir. 2009); see also Midgal v. Rowe Price-Fleming
Int'l, Inc., 248 F.3d 321, 326 (4th Cir. 2001) ("The presence of
a few conclusory legal terms does not insulate a complaint from
dismissal under Rule 12(b)(6) when the facts alleged in the
complaint cannot support the legal conclusion.").

C.    *Failure to Serve*

Under Rule 4, service must be perfected upon a defendant
within 90 days of filing the complaint.  See Fed. R. Civ. P.
4(m).  If the plaintiff has not completed service within 90
days, the court must determine whether the plaintiff has shown
good cause for failing to timely effect service.  See id.

The Fourth Circuit has explained that "good cause" in the
context of Rule 4(m) "requires some showing of diligence on the
part of the plaintiffs . . . [and] generally exists when the
failure of service is due to external factors, such as the
defendant's intentional evasion of service."  Attkisson v.
Holder, 925 F.3d 606, 627 (4th Cir. 2019).  A "plaintiff bears
the burden . . . of demonstrating good cause for any delay."
Iskander v. Baltimore Cty., Md., 2011 WL 4632504, at *1 (D. Md.
Oct. 3, 2011).  Courts often look to several factors to guide
their determination of whether plaintiffs have shown good cause,

which "include whether: 1) the delay in service was outside the plaintiff's control, 2) the defendant was evasive, 3) the plaintiff acted diligently or made reasonable efforts, 4) the plaintiff is pro se or in forma pauperis, 5) the defendant will be prejudiced, or 6) the plaintiff asked for an extension of time under Rule 6(b)(1)(A)." Scott v. Maryland State Dep't of Labor, 673 F. App'x 299, 306 (4th Cir. 2016) (citations omitted). "What constitutes 'good cause' for purposes of Rule 4(m) 'necessarily is determined on a case-by-case basis within the discretion of the district court.'" Collins v. Thornton, 782 F. App'x 264, 267 (4th Cir. 2019) (quoting Scott, 673 F. App'x at 306 (4th Cir. 2016)).

However, "even if there is no good cause shown . . . [district] courts have been accorded discretion to enlarge" the period for service. Henderson v. United States, 517 U.S. 654, 662 (1996) (quoting Advisory Committee's Notes); see, e.g., Escalante v. Tobar Constr., Inc., 2019 WL 109369, at *3 (D. Md. Jan. 3, 2019). Courts have identified several non-exhaustive factors that guide the discretionary decision of whether to enlarge the service period. Such factors include "(i) the possibility of prejudice to the defendant, (ii) the length of the delay and its impact on the proceedings, (iii) the reason(s) for the delay and whether the delay was within the plaintiff's

control, (iv) whether the plaintiff sought an extension before the deadline, (v) the plaintiff's good faith, (vi) the plaintiff's pro se status, (vii) any prejudice to the plaintiff, such as by operation of statutes of limitation that may bar refiling, and (viii) whether time has previously been extended." Robinson v, G D C, Inc., 193 F. Supp. 3d 577, 580 (E.D. Va. 2016).

*D.  Pro se filings*

Courts are required to liberally construe pro se complaints, such as the one filed in this action.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Even under this less stringent standard, however, the complaint must contain sufficient factual allegations to support a valid legal cause of action.  See Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).  The court may not rewrite the pleading to include claims that were never presented, Parker v. Champion, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court.  Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

11

III.    Analysis

*A. Robin Capehart*

On April 16, 2024, the court entered an Order informing plaintiff that the docket in this action reflected that service had not been obtained upon the defendants and ordering her to demonstrate good cause for not serving defendants with process. See ECF No. 15.  Plaintiff was also informed that "[f]ailure to respond to this order within ten days or an insufficient showing of good cause will result in dismissal without prejudice."  Id.

Plaintiff responded to the Order by providing proof of service for defendants Benjamin, Moore, and Lewis.  See ECF Nos. 16, 17, 18, and 28.  She also filed a motion seeking additional time to serve defendant Capehart.  See ECF No. 19.  That motion was granted and she was given until July 20, 2024, to serve Capehart.  See ECF No. 34.

Plaintiff never provided proof of service for Capehart. Accordingly, by Order entered on February 10, 2025, the court ordered plaintiff to provide proof of service for Capehart or the complaint would be dismissed as to him without prejudice. See ECF No. 58.  Plaintiff did not respond to that Order.

"'Good cause' as used in Rule 4(m) refers to a legally sufficient ground or reason based on all relevant circumstances."  Robinson, 193 F. Supp.3d at 580 (citing

12

McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 342 (1991)).
"A plaintiff's pro se status is not sufficient to establish good
cause." Shirley v. Staubs, 812 F. App'x 162, 162 (4th Cir.
2020).

Here, plaintiff has failed to state good cause for her
failure to serve Capehart. Nor has she asked for additional
time or indicated that she will be able to serve defendant
Capehart in the foreseeable future. As such, any further
extension of the service period would be futile.

The court also notes that plaintiff alleges no specific
acts of wrongdoing on the part of defendant Capehart. Her sole
allegation as to him is that "Capehart and Board of Governor's
[sic] are allegedly complicit in violation of constitutional
rights." ECF No. 2 at 4.

"[W]hen a jurisdictional attack is filed in conjunction
with other Fed. R. Civ. P. 12 motions, the court should consider
the jurisdictional attack before addressing any attack on the
merits." Tang v. University of Baltimore, 782 F. App'x 254, 256
(2019) ("Addressing the jurisdictional attacks (improper service
and Eleventh Amendment immunity) first, we find that that the
claims . . . against the individual Defendants in their official
capacities are barred by the Eleventh Amendment [and] that Tang
has failed to meet his burden of showing proper service. . . .

Accordingly, because the district court lacked subject matter
jurisdiction and/or personal jurisdiction over Tang's claims the
court lacked the jurisdiction to consider the Defendants'
arguments as to the merits of the complaint.  Accordingly, we
modify the district court's order to show that the dismissal is
based on jurisdictional grounds and is without prejudice[.]").

 Given that Capehart has not been served, he is **DISMISSED**
from this action without prejudice.  See Davis v. Wells Fargo
Auto, Case No. 5:21-CV-00205-M, 2022 WL 54549, at *6 (E.D.N.C.
Jan. 5, 2022) (dismissing claims against certain defendants
without prejudice pursuant to Rule 4(m)).

*B.  1983 Claims*

 To prevail on her claim under 42 U.S.C. § 1983, Hallman-
Warner must establish that a person acting under the color of
state law deprived her of a right secured by the Constitution or
laws of the United States.  See American Mfrs. Mut. Ins. Co. v.
Sullivan, 526 U.S. 40, 49-50 (1999); Thomas v. The Salvation
Army Southern Territory, 841 F.3d 632, 637 (4th Cir. 2016).

 "The doctrine of qualified immunity shields [law
enforcement] officers from civil liability so long as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known."  City of Tahlequah, Oklahoma v. Bond, 595 U.S. 9, 12

14

(2021) (cleaned up).  Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).

The Supreme Court laid out a two-step process for resolving the qualified immunity claims of government officials.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  See id. Second, a court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.  Id.  Courts may exercise discretion in deciding which of the two Saucier prongs "should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.  "That means that we may grant qualified immunity on the ground that the purported right was not clearly established without resolving the 'often more difficult question whether the purported right exists at all.'" Atkinson v. Godfrey, 100 F.4th 498, 504 (4th Cir. 2024) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).  "In the Fourth Circuit, we have a split burden of proof for the qualified-

15

immunity defense.  The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong." Stanton v. Elliott, 25 F.4th Cir. 227, 233 (4th Cir. 2022) (citing Henry v. Purnell, 501 F.3d 374, 377-78 & n.4 (4th Cir. 2007)).

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 664 (2012) (cleaned up).  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Stanton v. Sims, 571 U.S. 3, 6 (2013) (cleaned up).

Whether a right is clearly established is a question of law.  Ray v. Roane, 948 F.3d 222, 228 (4th Cir. 2020).  "[T]o determine whether a right was clearly established, we first look to cases from the Supreme Court, this Court, or the highest court of the state in which the action arose."  Id.

"While qualified immunity provides a defense to liability, it is also intended to free officials from litigation concerns

16

and disruptive discovery." <u>Atkinson v. Godfrey</u>, 100 F.4th 498,
504 (4th Cir. 2024).  The Supreme Court has "emphasized that
qualified immunity questions should be resolved at the earliest
possible stage of litigation" given that the immunity exists "to
protect public officials from the broad-ranging discovery that
can be peculiarly disruptive of effective government." <u>Anderson
v. Creighton</u>, 483 U.S. 635, 646 n.6 (1987) (cleaned up); <u>see
also</u> <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985) ("Unless the
plaintiff's allegations state a claim of violation of clearly-
established law, a defendant pleading qualified immunity is
entitled to dismissal before the commencement of discovery"
because "even such pretrial matters as discovery are to be
avoided if possible[.]"); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800,
818 (1982) ("Until the threshold immunity question is resolved,
discovery should not be allowed.").

     Therefore, this court has instructed lower courts to "give
a qualified immunity defense at the dismissal stage of
litigation a hard look [or] it risks unwittingly the forfeiture
of some protections afforded by that defense." <u>McVey v. Stacy</u>,
157 F.3d 271, 275 (4th Cir. 1998); <u>see also</u> <u>Putney v. Likin</u>, 656
F. App'x 632, 641 (4th Cir. 2016) (A "district court must, at
the outset, address the defendants' claim of qualified immunity,
because such immunity is designed to protect the defendants from

17

both discovery and trial.") (Niemeyer J., concurring in part, dissenting in part, and concurring in the judgment). "It is therefore incumbent on the courts to review the immunity defense critically at an early stage of the proceedings to determine the legal questions of whether the plaintiff has asserted a violation of a constitutional right and, if so, whether the constitutional right allegedly violated was clearly established at the time the defendant acted." McVey, 157 F.3d at 275; see also Oliver v. Roquet, 858 F.3d 180, 188 (3rd Cir. 2017) ("[Q]ualified immunity may be implicitly denied when a government official otherwise entitled to immunity is nonetheless subjected to 'the burdens of such pretrial matters as discovery.'") (quoting Behrens v. Pelletier, 516 U.S. 299, 308 (1996) (internal quotation marks omitted)).

Plaintiff alleges that defendants violated multiple constitutional rights. The court considered each right allegedly violated to see if plaintiff has stated a claim upon which relief may be granted. Having done so, for the reasons explained below, the court finds that plaintiff has not.

1.  Eleventh Amendment

"The Eleventh Amendment bars suits in federal court against a state by its own citizens, citizens of other states, and citizens of other countries." Doe v. Coastal Carolina Univ.,

359 F. Supp.3d 367, 378 (D.S.C. 2019).  Specifically, the
Eleventh Amendment provides:

> The Judicial power of the United States shall not be
> construed to extend to any suit in law or equity,
> commenced or prosecuted against one of the United
> States by Citizens of another State, or by Citizens or
> Subjects of any Foreign State.

"State sovereign immunity bars all claims by private citizens
against state governments and their agencies, except where
Congress has validly abrogated that immunity or the state has
waived it."  Biggs v. N.C. Dep't Pub. Safety, 953 F.3d 236, 241
(4th Cir. 2020) (cleaned up).

Furthermore, "[i]t has long been settled that the reference
to actions 'against one of the United States' encompasses not
only actions in which a State is actually named as the
defendant, but also certain actions against state agents and
state instrumentalities."  Regents of the Univ. of California v.
Doe, 519 U.S. 425, 429 (1997) (quoting Poindexter v. Greenhow,
114 U.S. 270, 287 (1885)); see also Coastal Carolina, 359 F.
Supp.3d at 378 ("Eleventh Amendment immunity also extends to
arms of the State and state employees acting in their official
capacity") (internal quotation and citation omitted).

"In deciding whether public state universities are arms of
the state, courts '[a]lmost universally . . . answer . . . in
the affirmative.'"  Coastal Carolina, 359 F. Supp.3d at 379

19

(quoting Md. Stadium Auth. v. Ellerbe Becket, Inc., 407 F.3d 255, 262 (4th Cir. 2005) (citations omitted)).  In an earlier case involving plaintiff, this court has already found that Bluefield State College is an arm of the State of West Virginia and entitled to sovereign immunity under the Eleventh Amendment. See Hallman-Warner v. Bluefield State College, Case No. 1:17-cv-02882, 2018 WL 1309748, at *7 (S.D.W. Va. Jan. 19, 2018) ("[T]he law is well-settled that BSC is an arm of the State of West Virginia."); see also State ex rel. West Virginia Bd. of Ed. v. Sims, 101 S.E.2d 190, 193 (W. Va. 1957) (holding that "Bluefield State College is an arm of the state and has no existence independent of the state.").

As our appeals court has recognized, "[t]he Eleventh Amendment bar to suit is not absolute[.]"  Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 248-49 (4th Cir. 2012).

There are three exceptions to that constitutional bar.

> First, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (internal quotation marks and alterations omitted). . . .  Second, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004). . . . Third, "[a] State remains free to waive its Eleventh Amendment immunity from suit in a federal court."

20

Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535
U.S. 613, 618, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002).

Id. at 249.

"Congress has not abrogated sovereign immunity for § 1983
suits[.]"  Biggs, 953 F.3d at 241.  As the Supreme Court has
recognized:

> Section 1983 provides a federal forum to remedy
> many deprivations of civil liberties, but it does not
> provide a federal forum for litigants who seek a
> remedy against a State for alleged deprivations of
> civil liberties.  The Eleventh Amendment bars such
> suits unless the state has waived its immunity. . .
> or unless Congress has exercised its undoubted power
> under § 5 of the Fourteenth Amendment to override that
> immunity.  That Congress, in passing § 1983, had no
> intention to disturb the States' Eleventh Amendment
> immunity and so to alter the federal-state balance in
> that respect was made clear. . . .

Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989)
(internal citations omitted); see also In re Secretary of Dept.
of Crime Control and Public Safety, 7 F.3d 1140, 1149 (4th Cir.
1993) ("While Congress may abrogate a State's Eleventh Amendment
immunity by express statutory language, . . . it has long been
settled that 42 U.S.C. § 1983 . . . does not effect such an
abrogation.").

Nor has the State of West Virginia consented to be sued in
federal court.  See Legg v. Putnam Co. Sheriff Office, Case No.
3:20-cv-00778, 2021 WL 2046432, at *4 (S.D.W. Va. Mar. 4, 2021)
("Historically, the State of West Virginia has not waived its

21

sovereign immunity in federal cases brought pursuant to § 1983, and there is no indication that the State would do so now."); Underwood v. West Virginia Dept. of Health and Human Res., Civil Action No. 2:11-cv-00506, 2013 WL 2319253, at *5 n.2 (S.D.W. Va. May 28, 2013) ("The Fourth Circuit has determined that the West Virginia statute concerning liability insurance (W. Va. Code § 29-12-5) only waives sovereign immunity from suit in state court."); Noe v. West Virginia, Civil Action No. 3:10-CV-38 (BAILEY), 2010 WL 3025561, *4 (N.D.W. Va. July 29, 2010) ("Here, however, the plaintiff has sued the State of West Virginia in federal court, where the State has not consented to be sued. Under these circumstances, the immunity provided by the Eleventh Amendment remains intact as a bar to suing the State of West Virginia in the federal forum.").

Finally, the Ex Parte Young exception does not apply as Hallman-Warner is not seeking prospective relief.  For all these reasons, her claims against defendants in their official capacity are barred by the Eleventh Amendment and their motions to dismiss on that basis are **GRANTED**.

### 2.  Failure to State a Claim

In her complaint, defendants Lewis and Benjamin are alleged to have violated multiple constitutional rights of plaintiff. The claims are asserted in a generalized, conclusory fashion

22

without any discussion as to how the conduct complained of violates those rights.  The court has nevertheless attempted to discern plaintiff's arguments as to how the conduct complained of, i.e., a police escort for an employee who has resigned when cleaning out her office, violates the enumerated constitutional rights.

At the outset, however, the court notes that the claims against defendant Lewis are subject to dismissal for failure to state a claim upon which relief may be granted.  The complaint does not allege that Lewis ordered the escort but only that he "was present and returned periodically to assess progress of police escort."  ECF No. 2 at 4.  "Although § 1983 must be read against the background of tort liability that makes a man responsible for the natural consequences of his actions, liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights."  Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (cleaned up).  "The doctrine of respondeat superior has no application under this section."  Id.

a. Fifth Amendment

Plaintiff is unable to state a claim under the Fifth Amendment.  A due process cause of action under the Fifth Amendment against state actors is not actionable under section

23

1983.  The Fifth Amendment's Due Process Clause applies to the
federal government, while the Fourteenth Amendment's Due Process
Clause applies to state and local governments.  Section 1983 is
a vehicle by which plaintiffs can assert claims against state
actors, making the Fourteenth Amendment the proper
constitutional amendment to assert due process protections
claims.  To the extent plaintiff pursues her claims under the
Fifth Amendment, they are not actionable under section 1983 and
must be dismissed.  See Overcash v. Shelnutt, 753 F. App'x 741,
746-47 (11th Cir. Oct. 12, 2018) ("Overcash attempts, as he did
in the district court, to bring a Fifth Amendment claim against
certain state-actor defendants.  The district court denied this
claim without prejudice, reiterating that the Due Process Clause
of the Fourteenth Amendment prohibits the States from depriving
any person of property without due process of law. . . .  Where
the acts complained of are committed by state (as opposed to
federal) officials, as all acts here were, the Fifth Amendment
obviously does not apply.").

   b. Fourteenth Amendment

      i. Substantive due process

Our appeals court has explained the contours of a
substantive due process claim as follows:

24

The Fourteenth Amendment Due Process Clause protects
individuals from states that would "deprive any
person of life, liberty, or property without due
process of law." U.S. Const. amend. XIV, § 1. The
Supreme Court has interpreted that Clause to provide
substantive rights which "protects individual
liberty against certain government actions
regardless of the fairness of the procedures used to
implement them." Collins v. City of Harker Heights,
503 U.S. 115, 125 (1992) (internal quotation marks
omitted). Thus, a plaintiff asserting a § 1983
substantive due process claim must allege both the
deprivation of his life, liberty or property
interest by a state actor, and that the deprivatin
of this interest was "arbitrary in the
constitutional sense." Id. at 129; see also Equity
in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91,
109 (4th Cir. 2011).

Callahan v. North Carolina Dep't of Public Safety, 18 F.4th Cir.
142, (4th Cir. 2021). "The touchstone of due process is
protection of the individual against arbitrary action of
government." "Arbitrary action," however, is used in a
constitutional sense, which encompasses "only the most egregious
official conduct," namely that which "shocks the conscience."
Slaughter v. Mayor and City Council of Baltimore, 682 F.3d 317,
321 (4th Cir. 2012). "The Due Process Clause does not convert
state-law tort claims into constitutional violations actionable
under § 1983." Callahan, 18 F.4th Cir. at 148. Therefore, both
the Fourth Circuit and the Supreme Court "have warned against
'constitutionalizing' state tort law through the Due Process
Clause." Id. at 145 (quoting Collins, 503 U.S. at 128).

"[T]o plead a due process claim against a state actor, the plaintiff must allege the state deprived him or her of life, liberty or property." See id. at 146.  Plaintiff's complaint fails to do so.  Even a broad reading of plaintiff's complaint does not suggest that she has been deprived of her life or liberty. The only property interest arguably implicated in her filing is her employment with Bluefield State.[3]  However, most

---

[3] In a later motion seeking to amend her complaint, plaintiff complains about the loss of her "intellectual property" because of her inability to access her office computer.  See ECF No. 56. However, even if defendants intentionally caused the loss of Hallman-Warner's property, she cannot maintain a due process claim when meaningful post-deprivation procedures are in place. Hudson v. Palmer, 468 U.S. 517, 533 (1984) ("Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."); Carter v. Lassiter, No. 1:18-CV-275-FDW, 2019 WL 6048043, at *5 (W.D.N.C. Nov. 14, 2019) ("Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy.").  The ability to file state court claims for loss of the property has been held to constitute a meaningful post-deprivation remedy. See Kidd v. Bradley, 578 F. Supp. 275, 276-77 (N.D.W. Va. 1984). As explained in Kidd:

> Under the common law of West Virginia, "[t]he tortious or unlawful taking of personal property, and the exercise of ownership and dominion over it, against the consent of the owner is . . . a conversion of the property for which ... [a cause of action] will lie." The common law likewise recognizes a cause of action for the negligent deprivation of, or injury to, one's personal property rights. Inasmuch as these common law

26

courts "have held that tenured public employment is not a
fundamental property interest entitled to substantive due
process protection." <u>Guthrie v. McClaskey</u>, Civil Action No.
1:11cv00061, 2012 WL 5494457, *6 (W.D. Va. Nov. 13, 2012); <u>see
also</u> <u>Copenny v. City of Hopewell</u>, 7 F. Supp.3d 635, 639 (E.D.
Va. 2014) ("Copenny's public employment, therefore, is not a
fundamental interest entitled to substantive due process
protection."); <u>Logar v. West Virginia Univ. Bd. o, f Governors</u>,
Civil Action No. 1:13-CV-145, 2013 WL 4501052, *6-9 (N.D.W. Va.
Aug. 21, 2013) (citing numerous authorities).

Hallman-Warner does not allege nor do her factual
allegations suggest that defendants deprived her of life,

---

actions provide the Plaintiff at bar with an adequate
post-deprivation remedy, the Court finds that the
Plaintiff has not stated a cause of action under
Section 1983.

<u>Id.</u> (citations omitted); <u>see also</u> <u>Goodman v. Ramey</u>, No. CIV.A.
2:12-0439, 2012 WL 5966642, at *4 (S.D.W. Va. Nov. 29, 2012)
(holding that an inmate failed to state a constitutional claim
for the loss of his property when he could have challenged the
taking "in a garden-variety tort claim in state court."). 
Because West Virginia offers an adequate post-deprivation remedy
for the alleged loss of intellectual property, plaintiff's due
process claims regarding the loss fail.  <u>See</u> <u>Sutton v. Sinclair</u>,
Case No. C19-1119-BJR-MLP, 2020 WL 7248463, at *10 (W.D. Wash.
Sept. 28, 2020) (holding that plaintiff's procedural and
substantive due process claims alleging the confiscation of
"intellectual property" failed because an adequate state post-
deprivation remedy existed).

liberty, or property rights guaranteed by the Constitution.
Therefore, her substantive due process claim fails.

### ii. Procedural Due Process

Her procedural due process claim fares no better. "The
procedural component of due process imposes constraints on
governmental decisions which deprive individuals of 'liberty' or
'property' interests within the meaning of the Due Process
Clause." D.B. v. Cardall, 826 F.3d 721, 741 (4th Cir. 2016)
(internal quotation marks omitted). A procedural due process
claim requires a plaintiff to show "(1) a cognizable liberty or
property interest; (2) the deprivation of that interest by some
form of state action; and (3) that the procedures employed were
constitutionally inadequate." Shirvinski v. U.S. Coast Guard,
673 F.3d 308, 314 (4th Cir. 2012).

Insofar as plaintiff attempts to assert a procedural due
process claim, it is deficient. Plaintiff has failed to plead a
violation of her procedural due process rights as she does not
even allege that she was deprived of adequate process. Her
failure to point to any process that she was allegedly denied is
fatal to her claim.

### iii. Equal Protection

"The Equal Protection Clause, which prohibits States from
denying persons 'the equal protection of the laws,' U.S. Const.

amend. XIV, § 1, 'keeps governmental decisionmakers from
treating differently persons who are in all relevant respects
alike[.]" <u>Fauconier v. Clarke</u>, 966 F.3d 265, 277 (4th Cir.
2020) (quoting <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 10 (1992)). "To
succeed on an equal protection claim, a plaintiff must first
demonstrate that he has been treated differently from others
with whom he is similarly situated and that the unequal
treatment was the result of intentional or purposeful
discrimination." <u>King v. Rubenstein</u>, 825 F.3d 206, 220 (4th
Cir. 2016).

Plaintiff asserts that her rights to equal protection have
been violated but she has failed to offer any instances of
persons who were treated differently or any facts to support her
claim. For this reason, she has failed to state an equal
protection claim. See <u>Lowe v. City of Charleston</u>, 597 F.
Supp.3d 855, 860 (D.S.C. 2022) ("When a plaintiff provides no
evidence that she was treated differently from others who are
similarly situated, the plaintiff's equal protection claim must
fail.").

c. First Amendment

The First Amendment provides that "Congress shall make no
law . . . abridging the freedom of speech." U.S. Const. amend.
I. This protection also "ensures against intrusion by the

29

states." <u>Porter v. Board of Trustees of North Carolina State
University</u>, 72 F.4th 573, 588 (4th Cir. 2023) (Richardson J.,
dissenting).

"'[A]s a general matter the First Amendment prohibits
government officials from subjecting an individual to
retaliatory actions' for engaging in protected speech." <u>Nieves
v. Bartlett</u>, 139 S. Ct. 1715, 1722 (2019) (quoting <u>Hartman v.
Moore</u>, 547 U.S. 250, 256 (2006)).  To prove a First Amendment
retaliation claim, a plaintiff must show that (1) "that
[plaintiff's] speech was protected"; (2) "defendant's alleged
retaliatory action adversely affected the plaintiff's
constitutionally protected speech"; and (3) "a casual
relationship exists between [plaintiff's] speech and the
defendant's retaliatory action." <u>Tobey v. Jones</u>, 706 F.3d 379,
387 (4th Cir. 2013) (quoting <u>Suarez Corp. Indus. v. McGraw</u>, 202
F.3d 676, 685 (4th Cir. 2000)).

The extent of plaintiff's First Amendment claim is that
"[d]efendant continues to allegedly violate 1st Amendment right
to free speech in the monitoring of social media posts." ECF
No. 2 at 4.  Insofar as plaintiff intended to assert a § 1983
retaliation claim based on her exercise of her First Amendment
right, she fails to allege sufficient facts against any named
defendant to adequately state such a claim.  Her vague

allegations do not provide the court with any basis to find that plaintiff was speaking on a matter of public concern. Moreover, by plaintiff's own admission, the "monitoring of social media posts" has occurred after plaintiff's employment ended and she does not allege a retaliatory action. See, e.g., Smith v. City of Quincy, No. CV-09-328-RMP, 2011 WL 611669, at *8 (E.D. Wash. Feb. 11, 2011) (explaining that "[n]o retaliatory action could have occurred because Smith was no longer employed by the [state employer]"). In sum, the court has no basis to find plaintiff's speech was protected or that any of the named defendants have retaliated against her. See Robinson v. Kitchen Worker Kathren, Case No. 23-cv-02661-JPG, 2023 WL 12056618, at *3 (S.D. Ill. Sept. 29, 2023) (dismissing First Amendment retaliation claim where plaintiff described "no retaliatory action taken against him . . . and also fails to indicate whether the [defendant]'s comments deterred him from exercising his First Amendment rights").

## IV. Motion to Amend

Hallman-Warner sought to amend her complaint on two occasions. First, she asked to amend her complaint to assert a Title VII retaliation claim. See ECF No. 32. The second time she attempted to pursue a state law claim for unlawful restraint. See ECF No. 56.

Under Rule 15(a) of the Federal Rules of Civil Procedure, unless a party is permitted to amend its pleading as a matter of course, it "may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."

In Foman v. Davis, 371 U.S. 178, 182 (1962), the United States Supreme Court noted that amendment under Rule 15(a) should be freely given absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."

A.    *Title VII retaliation claim*

Plaintiff sought to amend her complaint to add a Title VII retaliation claim almost two years after her original complaint was filed.  According to her, that "complaint was completed at the same time of the current matter before the court yet was inadvertently omitted in the May 2022 filing."  ECF No. 32.

Once a plaintiff receives a Notice of Right to Sue letter from the EEOC, any lawsuit arising out of those claims must be filed within 90 days of receipt of the notice.  See 42 U.S.C. § 2000e-16c; Baker v. Regan, 1:23cv91, 2024 WL 2891474, *4 (M.D.N.C. June 10, 2024) (discussing the 90-day deadline to file

32

suit).  Hallman-Warner's motion to amend falls well outside that
90-day deadline.  Therefore, her Title VII retaliation claim is
barred as outside the statute of limitations.  "When proposed
claims in an amendment are barred by the statute of limitations,
Rule 15(c) provides for the relation back of amendments to the
original pleading under certain circumstances."  United States
v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000).  Under Rule
15(c)(2), "[a]n amendment to a pleading relates back to the date
of the original pleading when . . . the amendment asserts a
claim or defense that arose out of the conduct, transaction, or
occurrence set out—or attempted to be set out—in the original
pleading[.]"

>    To relate back, "there must be a factual nexus
> between the amendment and the original complaint."
> Grattan v. Burnett, 710 F.2d 160, 163 (4th Cir. 1983),
> aff'd 468 U.S. 42 (1984).  That is, "the amended
> claims and the original claims [must share a core of
> operative facts."  Steven S. Gensler, Federal Rules of
> Civil Procedure:  Rules & Commentary ("Rules &
> Commentary") Rule 15 (2022). . . .

>    Thus, "relation back is proper when the amended
> complaint amplifies the existing allegations or makes
> the existing allegations more definite and precise" by
> "present[ing] additional facts."  Gensler, Rules &
> Commentary Rule 15.  Relation back also is proper even
> if the amendment presents a "new claim [that]
> involve[s] different sources of proof" or "new legal
> theories," as long as "the core facts are the same."
> Id.  In contrast, relation back is not proper if the
> amendment presents "new claims [that] arise from an
> entirely different event or set of facts."

33

Tynes v. Mayor and City Council of Baltimore, Civil No. 1:22-cv-01452-ELH, 2023 WL 2664233, at *24 (D. Md. Mar. 28, 2023).

Plaintiff's Title VII retaliation claim does not relate back to her claims asserted in this case.  A retaliation claim does not arise out of the conduct, transaction, or occurrence set out in the original complaint.  The events surrounding the Title VII retaliation predate the events complained of herein, occurring on December 23, 2020.  Any evidence regarding Title VII retaliation is wholly distinct from the evidence that would be offered in support of plaintiff's § 1983 claim.

Plaintiff is attempting to assert a Title VII retaliation claim long after expiration of the statute of limitations.  Her claim is time-barred and, therefore, futile.  "Where the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied."  United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000); see also Howard v. McCrory Corp., 601 F.2d 133, 136 (4th Cir. 1979) (affirming denial of motion to file amended complaint setting forth an entirely new cause of action that was not suggested in the original complaint and that was proposed only after the statute of limitations had expired); Baker, 2024 WL 2891474, at *6 (denying motion to amend complaint to add untimely Title VII and FLSA claims on grounds of futility);  Silver v. Bayer Healthcare Pharmaceuticals, Inc.,

Civil Action No. 2:19-3495-DCN-MHC, 2022 WL 2829885, at *2
(D.S.C. Apr. 19, 2022) (finding proposed amended complaint did
not relate back to original complaint because new claims did
"not arise out of the conduct, transaction, or occurrence set
out in the" original complaint).

*B.   Unlawful Restraint*

     Citing West Virginia Code § 61-2-14g, plaintiff seeks leave
of the court to assert a complaint for unlawful restraint.  West
Virginia Code § 61-2-14g(a), a criminal statute, defines
unlawful restraint as follows:

> Any person who, without legal authority
> intentionally restrains another with the intent that
> the other person not be allowed to leave the place of
> restraint and who does so by physical force or by
> overt or implied threat of violence or by actual
> physical restraint but without the intent to obtain
> any other concession or advantage as those terms are
> used in section fourteen-a of this article is guilty
> of a misdemeanor and upon conviction shall be confined
> in jail for not more than one year, fined not more
> than $1,000, or both.

However, as defendants point out, W. Va. Code 61-2-14g is a
criminal statute that does not give rise to civil liability or
authorize a private right of action.  "The Supreme Court
historically has been loath to infer a private right of action
from a bare criminal statute, because criminal statutes are
usually couched in terms that afford protection to the general

public instead of a discrete, well-defined group." Doe v. Broderick, 225 F.3d 440, 447-48 (4th Cir. 2000) (cleaned up).

Nevertheless, given the nature of plaintiff's allegations, the court has considered whether plaintiff should be allowed to amend her complaint to allege a violation of the Fourth Amendment in support of her § 1983 claim.  The court concludes that she should not because doing so would be futile.

First, for the reasons discussed above, the Eleventh Amendment bars plaintiff's claims against defendants in their official capacities.  Plaintiff's response to this is to argue that "defendants are not entitled to immunity as the college is a recip[ient] of federal funding."  ECF No. 63 at 1.[4]  That argument is without merit.  Second, as noted above, her complaint still fails to provide specific instances of alleged wrongdoing on the part of defendant Lewis; therefore, the claims against him are entitled to dismissal for failure to state a claim.  Finally, even if plaintiff were able to state a claim

---

[4] Plaintiff reliance on 42 U.S.C. § 2000d-7(a)(1) in support of this argument is misplaced.  Under that statute, "the acceptance of federal funding waives the state's Eleventh Amendment immunity" for Title IX and other enumerated claims.  Painter v. Adams, DOCKET No. 3:15-cv-00369-MOC-DCK, 2017 WL 4678231, at *5 (W.D.N.C. Oct. 17, 2017).  However, 2000d-7 does not abrogate states' Eleventh Amendment immunity from suits brought under 42 U.S.C. § 1983.  See id.

under § 1983 grounded in violation of the Fourth Amendment,
defendants would be entitled to qualified immunity.[5]

Plaintiff admits that the police escort was a negotiated
part of her settlement agreement.  See ECF No. 63 at 2 ("[A]s
respective counsels, including representative of the plaintiff,
agreed amongst themselves, without the knowledge, consent, or
input of the plaintiff, orchestrated a 'non-negotiable' polices
[sic] escort out during the time that the plaintiff held the
position of tenured professor.").

The Fourth Amendment protects "against unreasonable
searches and seizures."  U.S. Const. amend. IV.  In order to
pursue her § 1983 claim under the Fourth Amendment, Hallman-
Warner must plausibly allege that defendant's actions in
ordering a police escort were a seizure of constitutional
magnitude.  She has not done so.

"Only when [an] officer, by means of physical force or show
of authority, has in some way restrained the liberty of a
citizen may we conclude that a seizure has occurred."  Florida

---

[5] For the first time, plaintiff maintains that she is suing the
Bluefield State College Board of Governors ("BSCBOG").  See ECF
No. 63 at 3.  However, the record shows that Bluefield State
College Board of Governors is not a defendant in this matter.
In her complaint, Hallman-Warner did not name BSCBOG as a
defendant.  See ECF No. 2.  Plaintiff never requested a summons
nor has she served BSCBOG.  In any event, any § 1983 claim
against the BSCBOG would be barred by the Eleventh Amendment.

—

<u>v. Bostick</u>, 501 U.S. 429, 434 (1991).  Courts should "examine the totality of the circumstances in determining whether a seizure occurred."  <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 680 (3d Cir. 2012).  "For Fourth Amendment rights implications within the Fourth Circuit, an individual has been seized 'if, in view of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"  <u>Payne v. Lee</u>, Civil Action No. 1:15-cv-01268, 2016 WL 4009820, at *1 (E.D. Va. July 25, 2016) (quoting <u>Figg v. Schroeder</u>, 312 F.3d 625, 636 (4th Cir. 2002)).

In <u>Payne</u>, a case very similar to this one, the court found that the plaintiff had not been seized.  <u>See id.</u> at *2.  In that case,

> Plaintiff's Amended Complaint merely alleges that security guards accompanied U.S. PTO personnel to his office during Plaintiff's advising that he was placed on administrative leave, that he was barred from the U.S. PTO's premises during that leave, and that the same security guards escorted him off of agency grounds.  These circumstances do not amount to a Fourth Amendment "seizure."

> During the incident at issue, Plaintiff was "free to leave" the U.S. PTO office space.  In fact, Plaintiff's leaving was the express goal of the U.S. PTO officials.  Plaintiff was free to go anywhere outside the office.  Plaintiff makes no claim that a reasonable person would not have felt free to leave during the circumstances he experienced.  <u>Figg</u>, 312 F.3d at 636.  Plaintiff was not "seized" and does not state a plausible Fourth Amendment claim upon which relief could be had.

38

Id.; Reaves v. Maxton Police Dept., No. 7:22-CV-204-FL, 2023 WL 2925159, at *2 (E.D.N.C. Feb. 24, 2023) (recommending dismissal of Fourth Amendment § 1983 claim where "[t]he factual allegations do not support that [plaintiffs] were taken into custody or detained in any way; rather, they were escorted off school property, which the court previously found did not amount to a detention"); see also McClure v. Ports, 914 F.3d 866, 874 (4th Cir. 2019) (rejecting plaintiff's "contention that his Fourth Amendment rights were violated when police escorted him from MTA property" because "the police acted reasonably").  Even under plaintiff's version of the facts, it is clear that a reasonable person would have felt free to leave BSC on December 23, 2020.  The police escort was not in place to prevent plaintiff from leaving but, rather, was aimed at getting her off campus.

Moreover, even if Hallman-Warner's constitutional rights under the Fourth Amendment were violated by the police escort (and the court does not think they have been), defendant Benjamin would nevertheless be entitled to qualified immunity.

Defined at the level of specificity required by the Supreme Court and drawing inferences in favor of plaintiff, the court must determine whether it was clearly established law in

39

December 2020, that ordering a police escort to accompany
Hallman-Warner while she was cleaning out her office was an
unconstitutional seizure where: (1) Hallman-Warner had resigned
as part of a court-ordered mediation; and (2) her attorney had
agreed to the police escort.  There is simply no case that would
make it apparent to Benjamin that doing so would violate clearly
established law.

## V.  Motion to Reopen

Plaintiff has also filed a motion to reopen Civil Action
No. 1:17cv2882 and consolidate it with this case.  See ECF No.
20.  In that 2017 case, plaintiff and her husband sued Bluefield
State and twelve individuals associated with BSC alleging
retaliation in violation of Title VII of the Civil Rights Act of
1964, 42 U.S.C. § 2000e, et seq., as well as Fourth Amendment
and defamation claims.  See Hallman-Warner v. Bluefield State
College, Case No. 1:17-cv-02882, 2018 WL 1309748 (S.D.W. Va.
Jan. 19, 2018).  By Judgment Order entered March 13, 2018, the
court dismissed plaintiffs' complaint.  See ECF No. 59 in Civil
Action No. 1:17cv2882.  Plaintiffs' appeal was dismissed by the
United States Court of Appeals for the Fourth Circuit on July
30, 2018.  See ECF No. 65 in Civil Action No. 1:17cv2882.

The court has construed plaintiff's request as a motion for
relief from judgment under Federal Rule of Civil Procedure 60(b).

40

Rule 60(b) of the Federal Rules of Civil procedure provides in pertinent part:

> On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based upon an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Relief from final judgment under Rule 60(b) is an extraordinary remedy that "is only to be invoked upon a showing of exceptional circumstances." Pressley Ridge Schools v. Lawton, 180 F.R.D. 306, 308 (S.D.W. Va. 1998). Dispositions of Rule 60(b) motions are reviewed for abuse of discretion. See id.

The instant motion to reopen and consolidate was filed more than six years after the 2017 case was dismissed. Furthermore, plaintiff has cited no legal authority that would permit the relief she requests. Nor has she articulated a good reason to reopen the earlier case. The issues presented in that case have nothing to do with the events of December 23, 2020. Accordingly, plaintiff's motion to reopen and consolidate is **DENIED**.

41

VI.  Conclusion

Defendants' motions to dismiss are **GRANTED.**  Defendant
Capehart is **DISMISSED** as a defendant pursuant to Federal Rule of
Civil Procedure 4(m).  The motions to amend and reopen and
consolidate are **DENIED.**  All other motions are **DENIED** as moot.
To the extent that plaintiff has asserted any state law claims,
they are dismissed as the court declines to exercise
supplemental jurisdiction over them.  See 28 U.S.C. § 1367(c)(3)
("district courts may decline to exercise supplemental
jurisdiction . . . if . . . the district court has dismissed all
claims over which it has original jurisdiction").

The Clerk is directed to send copies of this Memorandum
Opinion and Order to all counsel of record and unrepresented
parties.

**IT IS SO ORDERED** this 31st day of March, 2025.

ENTER:

David A. Faber
Senior United States District Judge

42